# KITTSON COUNTY v. WELLS, DENBROOK & ASSOCIATES, INC., AND OTHERS. CEMENT ENAMEL DEVELOPMENT, INC., THIRD-PARTY DEFENDANT.

241 N. W. 2d 799.

April 23, 1976—No. 45660.

238

*Dennis M. Sobolik,* County Attorney, and *Robert K. Severson,* for appellant.

*Padden, Dickel, Johannson, Wall & Taylor* and *Lee E. Wall,* for respondent Dean L. Witcher Incorporated.

*Wurst & McDowell* and *Shaft, Shaft, McConn & Fisher,* for respondent Wells, Denbrook & Associates, Inc.

*Erickson, Erie & Odland* and *Lee Hamilton,* for respondent Witcher Construction Co.

*Tweten & German* and *O'Grady, Edwards, Anderson & Lawrence,* for respondent Nordenstrom Plastering Co.

*Garrity, Cahill, Gunhus, Streed, Grinnell & Jeffries* and *Paul E. Grinnell,* for respondent Cement Enamel Development, Inc.

KELLY, JUSTICE.

Plaintiff county appeals from a judgment of the district court dismissing its action against defendant architects and construction contractors as barred by the 2-year statute of limitations in Minn. St. 541.051, subd. 1. We reverse.

The county employed defendants Wells, Denbrook & Associates (architects) and Dean L. Witcher, Inc. (contractor) to plan and build a new courthouse. The contractor, in turn, subcontracted the exterior finish of the building to defendant Nordenstrom

Plastering Company, Inc. (subcontractor). The subcontractor furnished materials and labor for the application of Granolux, an exterior surfacing material composed of marble chips, to the exterior of the courthouse.[1] The courthouse was completed and payment was made to the architect and contractor in 1966. In 1967, Granolux chips fell off a panel on one wall, but this defect was apparently repaired to everyone's satisfaction by the subcontractor. Later, in 1969 or 1970, more Granolux began to crack and fall off the walls. This condition has continued since that time with more Granolux falling off each year. On January 15, 1974, the county brought the instant action, alleging breach of warranty and negligence in designing and installing defective finish on the courthouse. Defendants moved for a summary judgment of dismissal, arguing that the action was brought more than 2 years after the county's discovery of the cracking Granolux and was therefore barred by Minn. St. 541.051, subd. 1. The trial court dismissed the action and this appeal followed.

Minn. St. 541.051, subd. 1, provides:

"Except where fraud is involved, no action to recover damages for any injury to property, real or personal, or for bodily injury or wrongful death, arising out of the defective and unsafe condition of an improvement to real property, nor any action for contribution or indemnity for damages sustained on account of such injury, shall be brought against any person performing or furnishing the design, planning, supervision, or observation of construction or construction of such improvement to real property more than two years after discovery thereof, nor, in any event more than ten years after the completion of such construction. This limitation shall not be applied in favor of any person in actual possession and control as owner, tenant, or otherwise, of the improvement at the time the defective and unsafe conditions of such improvement constitutes the proximate cause of the injury for which it is proposed to bring an action."

---

[1] The subcontractor filed a third-party complaint against Cement Enamel Development, Inc., which manufactured the Granolux.

This is the first occasion we have had to consider fully the proper scope and application of this statute.[2]

We observe at the outset that the statute does not clearly specify what kinds of actions and what types of parties fall within its limitation provisions. While we have in the past construed statutes of limitation liberally as embodying important public policy in barring stale claims, Roe v. Widme, 191 Minn. 251, 254, 254 N. W. 274, 276 (1934); Brasie v. Minneapolis Brewing Co. 87 Minn. 456, 464, 92 N. W. 340, 343 (1902); 11A Dunnell, Dig. (3 ed.) § 5595, we think a rule of strict construction is more appropriate in the instant case because (1) the scope of the statute is uncertain and the persons affected by its terms may not be fairly apprised of its application to their activities; and (2) the statute has the potential of working a harsh result on such person and others because of the shortness of the 2-year "discovery" provision and the absolute nature of the 10-year nullification provision, which applies despite a total lack of notice of any condition giving rise to a cause of action. We are also aware that application of the 10-year nullification provision might create grave constitutional issues.[3] The scope of the statute as a whole

---

[2] In Lowry Hill Properties, Inc. v. Ashbach Const. Co. 291 Minn. 429, 194 N. W. 2d 767 (1971), we held only that pile driving and paving activities did not constitute a condition of an improvement to real property and were therefore not within the statute.

[3] See, Minn. Const. art. 1, § 8. Twelve courts have ruled on the constitutionality of statutes similar to Minn. St. 541.051. In seven states the statutes have been upheld: New Jersey, Rosenberg v. Town of North Bergen, 61 N. J. 190, 293 A. 2d 662 (1972); Washington, Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co. 81 Wash. 2d 528, 503 P. 2d 108 (1972); Oregon, Josephs v. Burns, 260 Ore. 493, 491 .P. 2d 203 (1971); Arkansas, Carter v. Hartenstein, 248 Ark. 1172, 455 S. W. 2d 918 (1970), appeal dismissed, 401 U. S. 901, 91 S. Ct. 868, 27 L. ed. 2d 800 (1971); Utah, Good v. Christensen, 527 P. 2d 223 (1974); Pennsylvania, Freezer Storage, Inc. v. Armstrong Cork Co. 234 Pa. Super. 441, 341 A. 2d 184 (1975); Virginia, Smith v. Allen-Bradley Co. 371 F. Supp. 698 (W. D. Va. 1974). Five states have held statutes similar to § 541.051 unstitutional: Kentucky, Saylor v. Hall, 497 S. W. 2d 218 (1973); Illinois,

should therefore be construed narrowly so as to avoid constitutional questions. Minn. St. 645.17(3); Head v. Special School Dist. No. 1, 288 Minn. 496, 182 N. W. 2d 887 (1970), certiorari denied sub nom., Minneapolis Federation of Teachers, Local No. 59 v. Spannaus, 404 U. S. 886, 92 S. Ct. 196, 30 L. ed. 2d 168 (1971).

■ With the foregoing principle of construction in mind, our examination of the language and purpose of Minn. St. 541.051 convinces us that it applies only to actions in tort by third parties against persons "performing or furnishing the design, planning, supervision, or observation" of construction of an improvement to real estate.

While the statute does not use the term "tort," it contains several references which strongly suggest the legislature intended it to apply only to tort actions. First, the statute refers several times to an "injury" to person or property. Second, the statute requires that such an injury arise out of the "defective *and unsafe*" condition of an improvement to real property. (Italics supplied.) Third, the final sentence of the first subdivision of the statute refers to defective and unsafe conditions "constitut[ing] the *proximate cause* of the injury." (Italics supplied.) The concept of an unsafe condition constituting the proximate cause of an injury is clearly borrowed from tort law, not from contract or warranty law.[4]

While we have no legislative history to enlighten us as to the exact purpose of the statute, we note that at least 30 jurisdictions

Skinner v. Anderson, 38 Ill. 2d 455, 231 N. E. 2d 588 (1967); Hawaii, Fujioka v. Kam, 55 Hawaii 7, 514 P. 2d 568 (1973); Wisconsin, Kallas Millwork Corp. v. Square D Co. 66 Wis. 2d 382, 225 N. W. 2d 454 (1975); Alabama, Bagby Elev. & Elec. Co. Inc. v. McBride, 292 Ala. 191, 291 So. 2d 306 (1974).

[4] We acknowledge the helpful memoranda of two of our state's trial judges which were the source of our reasoning here. Skramstad v. Lorenzen, File No. 658530, Hennepin County District Court (Amdahl, J., 1972); Richards v. Edco Products, Inc. File No. 558276, Hennepin County Municipal Court (Bowen, J., 1973).

have recently enacted similar statutes. In Comment, 18 Cath. U. L. Rev. 361, the author stated:

"* * * These statutes resulted from pressures brought to bear upon state legislatures by the architectural profession and construction industry after a major extension of their potential liability. The shelter of the privity of contract doctrine, which insulated architects and builders from liability to third parties long after the doctrine's demise in manufacturers' product liability cases, was shattered in the early 1960's."

We can fairly assume that our statute was a part of this trend, and we therefore confine its application to tort actions by persons *not in privity* with the party asserting the statute as a bar.[5]

If, as we believe, the abolition of the privity doctrine, and the resulting exposure of architects and builders to potential liability of indefinite duration from third-party tort claims, was the occasion for enacting § 541.051, then our construction does no more than confine the application of the statute to its legislative purpose. Moreover, in contrast to the language of our statute, several of the similar statutes in other jurisdictions contain additional language which broadens their scope to include actions by owners sounding in breach of contract. See, e. g., N. J. Stat. Ann. § 2A:14-1.1 (1952) pocket part ("No action whether in contract, in tort, or otherwise * * *"); Ark. Stat. Ann. § 37-237 (1947 [1962 Replacement]) pocket part. If our legislature had in-

---

[5] In Jack v. Applebaum's Food Markets, Inc. 280 Minn. 247, 158 N. W. 2d 857 (1968), a customer had obtained a jury verdict against Applebaum's for damages sustained at Applebaum's when she stepped into a drain depression and fell. Applebaum's brought an indemnity action against the installer of equipment which partially blocked the drain. This court sustained the dismissal of indemnity action on the narrow ground that Appelbaum's negligence in failing to repair a known hazard was greater than defendant's negligence, and thus indemnity would not lie. We there noted that under Minn. St. 541.051 such an indemnity action, occasioned by a third-party tort claim, must be brought within 2 years after the discovery of the hazard. 280 Minn. 250, footnote 1, 158 N. W. 2d 859.

tended § 541.051 to cover actions sounding in contract or in warranty, based on defective workmanship and brought by an owner against his architect or contractor, it could and should have included language similar to that of the New Jersey statute noted above.

The instant case is an action sounding in breach of contract and in warranty, and the plaintiff is in privity with the defendants. Therefore, § 541.051 is not applicable and this action is governed by the 6-year statute of limitations in § 541.05(1). Since it is apparently undisputed that the action was brought within 6 years of discovery of the defect, we reverse and remand for further proceedings.

Reversed and remanded.

MR. JUSTICE MACLAUGHLIN took no part in the consideration or decision of this case.