**MINNESOTA FEDERATION OF TEACHERS, et al., Appellants,**

v.

**Gene MAMMENGA, Commissioner of the Minnesota Department of Education, et al.,**

**Bethel College and Seminary, Respondents.**

No. C8–92–2455.

Court of Appeals of Minnesota.

May 18, 1993.

Review Denied Aug. 6, 1993.

Roger A. Peterson, Ronald G. Marks, Hubert G. Leon, Peterson, Engberg & Peterson, Minneapolis, for appellants.

Hubert H. Humphrey, III, Atty. Gen., Charles T. Mottl, Asst. Atty. Gen., Cindy L.
Lavorato, Spec. Asst. Atty. Gen., St. Paul, for Gene Mammenga, et al.

James P. McCarthy, Laura L. Daly, Lindquist & Vennum, Minneapolis, for Bethel College & Seminary.

Considered and decided by NORTON, P.J., and SCHUMACHER and PETERSON, JJ.

## OPINION

SCHUMACHER, Judge.

Appellants Minnesota Federation of Teachers (MFT) and Sandra Peterson, its president, challenge the constitutionality under the Minnesota Constitution's establishment clauses, Minn. Const. art. 1, § 16, and art. 13, § 2, of the Post–Secondary Enrollment Options Act as applied to respondent Bethel College and Seminary. The district court granted summary judgment to Bethel and respondents Gene Mammenga, Commissioner of the Minnesota Department of Education, and Thomas Lindquist, President of the State Board of Education. We affirm.

## FACTS

The Post–Secondary Enrollment Options Act (PSEOA), Minn.Stat. § 123.3514 (1990), permits eleventh and twelfth-grade students in public schools to apply to any eligible college or university to take courses for either secondary or post-secondary credit. If the student takes courses for secondary credit, the state reimburses the college or university for the lesser of the actual cost of tuition, materials, fees, and textbooks or the amount equal to the product of a formula involving the school district's "basic revenue." *Id.*, subd. 6.[1] Students may enroll in participating private colleges, but reimbursement is only provided for nonsectarian courses. *Id.*, subd. 2.

In February 1991, MFT and Peterson sued 15 Minnesota private colleges, including Bethel, arguing the PSEOA violates the Minnesota Constitution's establishment

---

1. The legislature amended the formula for reimbursing a post-secondary institution in 1991, *see* 1991 Minn.Laws ch. 265, art. 9, § 38, and also in 1992, *see* 1992 Minn.Laws ch. 499, art. 9, § 7. This opinion only examines the 1990 version of the statute.

clauses. The district court granted summary judgment, holding the PSEOA was facially constitutional and concluding the findings in an earlier federal district court decision, *Minnesota Fed'n of Teachers v. Nelson*, 740 F.Supp. 694, 715–21 (D.Minn. 1990), collaterally estopped the MFT and Peterson from relitigating whether the colleges were sectarian and how the colleges used PSEOA funds. This court affirmed the district court's holding in part, but it reversed and remanded as to Bethel because of the "absence of findings" on Bethel's sectarian/secular nature and its use of PSEOA funds. *Minnesota Fed'n of Teachers v. Mammenga*, 485 N.W.2d 305, 310–11 (Minn.App.1992), *pet. for rev. denied* (Minn. June 30, 1992) (*Mammenga I*).

After remand, Bethel permitted discovery about the use of PSEOA funds but did not comply with MFT's discovery requests about its alleged sectarian nature. In October 1992, Bethel and the state moved for summary judgment, contending dismissal was proper as a matter of law because (1) Bethel's benefit from PSEOA funds was indirect and incidental and (2) inquiry into Bethel's sectarian nature was therefore not necessary. For the summary judgment motion, Bethel permitted the presumption that it was pervasively sectarian. The district court granted Bethel summary judgment, and this appeal followed.

## ISSUE

Can Bethel College, a presumptively sectarian school, participate under the PSEOA without violating the Minnesota Constitution's establishment clauses?

## ANALYSIS

 On appeal from summary judgment, the reviewing court must

determine (1) whether there are any genuine issues of material fact and (2)

whether the district court erred in its application of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). If the reviewing court determines material issues of fact exist, the case should be remanded to the district court without a decision on the legal issues. *Caledonia Community Hosp. v. Liebenberg Smiley Glotter & Assocs. Inc.*, 308 Minn. 255, 258–59, 248 N.W.2d 279, 281 (1976). In reviewing questions of law, this court need not defer to the district court's legal conclusions and is free to independently determine the applicable law. *Dahlheimer v. City of Dayton*, 441 N.W.2d 534, 536 (Minn.App.1989), *pet. for rev. denied* (Minn. Aug. 15, 1989).

 The Minnesota Constitution's establishment clauses prohibit both "benefits" and "support" to schools teaching distinctive religious doctrines. Minn. Const. art. I, § 16, and art. XIII, § 2.[2] In applying the establishment clauses, a two-step inquiry exists: (1) is the public benefit or support to the school indirect and incidental; and (2) is the school pervasively sectarian. *Mammenga I*, 485 N.W.2d at 310; *see also Americans United, Inc. v. Independent Sch. Dist. No. 622*, 288 Minn. 196, 214, 179 N.W.2d 146, 156 (1970) (holding when sectarian school is involved, indirect and incidental benefits to school do not violate Minnesota Constitution's establishment clauses).

If the first question is answered in the affirmative, then public aid to the school does not violate the state's establishment clauses. Hence, a legislative enactment like the PSEOA may be constitutional as applied to Bethel even if Bethel is pervasively sectarian. *See Americans United*, 288 Minn. at 214–15, 179 N.W.2d at 156; *Mammenga I*, 485 N.W.2d at 310.

 We conclude the PSEOA benefits to Bethel are indirect and incidental as a matter of law for several reasons. First, the

---

**2.** Minn. Const. art. I, § 16 provides in relevant part,

> nor shall any money be drawn from the treasury for the benefit of any religious societies or religious or theological seminaries.

Minn. Const. art. XIII, § 2 provides:

> In no case shall any public money or property be appropriated or used for the support of schools wherein the distinctive doctrines, creeds or tenets of any particular Christian or other religious sect are promulgated or taught.

PSEOA is designed to benefit high school students, not Bethel, by providing an opportunity for Minnesota's high school students to take nonsectarian courses at participating colleges. Second, participating students may attend either public or private universities and colleges. Consequently, Bethel has no control over the number of students who select Bethel, and reimbursement is provided only for PSEOA students enrolled in nonsectarian courses. *See* Minn.Stat. § 123.3514, subd. 2.

Third, the state reimbursed Bethel for only 42% of the actual costs for tuition, textbooks, materials and fees for PSEOA students in the 1991–92 school year. Finally, Bethel separates PSEOA reimbursements from its other funds to ensure the state benefits are used for only nonsectarian purposes. Under these circumstances, we agree with the district court and hold that, as a matter of law, PSEOA benefits to Bethel are indirect and incidental. Accordingly, the PSEOA does not violate the Minnesota Constitution's establishment clauses as applied to Bethel.

█ MFT and Peterson contend that to determine whether the PSEOA is constitutional as applied to Bethel, the district court must make findings about Bethel's sectarian nature. MFT and Peterson argue, in other words, that if a college like Bethel is pervasively sectarian, it may not receive *any* state funds without violating the Minnesota establishment clauses. We disagree. Read together, *Americans United* and *Mammenga I* advance the rule of law that even if a college is pervasively sectarian, state funds may be accorded it, if the benefit to the college is indirect and incidental. *Americans United,* 288 Minn. at 214–15, 179 N.W.2d at 156; *Mammenga I,* 485 N.W.2d at 310; *see also Witters v. Washington Dept. of Servs. for the Blind,* 474 U.S. 481, 488, 106 S.Ct. 748, 752, 88 L.Ed.2d 846 (1986) (federal establishment clause not violated if public funds flow to religious institutions because of aid recipi-

ent's genuinely independent and private choice). In this case we conclude PSEOA benefits to Bethel are incidental and indirect and therefore MFT and Peterson's contention fails.[3]

MFT and Peterson's reliance on *School Dist. of Grand Rapids v. Ball,* 473 U.S. 373, 105 S.Ct. 3216, 87 L.Ed.2d 267 (1985) is misplaced. Unlike the PSEOA, the "Shared Time" and "Community Education" programs in *Ball* were provided only to nonpublic school students. *Id.* at 378, 105 S.Ct. at 3219. Hence, *Ball* is distinguishable on the grounds (1) the funds went directly to sectarian schools to benefit nonpublic school students, and (2) the program subsidized the sectarian schools by reducing a portion of their need to teach secular subjects.

MFT and Peterson argue the Minnesota Constitution's religion clauses are stricter than their federal counterpart and therefore the PSEOA as applied to Bethel violates the Minnesota Constitution. MFT and Peterson, however, mischaracterize the supreme court's statement in *State v. Hershberger,* 462 N.W.2d 393 (Minn.1990). The *Hershberger* court said that Minn. Const. art I, § 16 "is of a distinctively stronger character than the federal counterpart." *Id.* at 397. The court, however, was not referring to the specific clause at issue in this case. It was instead discussing the general free exercise and establishment components of the Minnesota Constitution. *Id.* Hence, MFT and Peterson's reliance on the statement in *Hershberger* is unpersuasive.

### DECISION

The PSEOA does not violate the Minnesota Constitution's establishment clauses as applied to Bethel College.

**Affirmed.**

---

3. MFT and Peterson claim the district court erred by holding Bethel's sectarian nature is "irrelevant" to the constitutional analysis. Neither Bethel nor the district court embraced this position however. Instead, the district court concluded that because PSEOA funds to Bethel did not benefit or support religion the second step of the analysis—determining whether Bethel was pervasively sectarian—was unnecessary.